United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 01, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 22-90267** |
| **LOIS BUSINESS DEVELOPMENT** | § | |
| **CORPORATION,** *et al.,* | § | |
| | § | |
| **Debtors.** | § | |
| | § | |
| | § | |
| | § | **CHAPTER 11** |

## MEMORANDUM OPINION

James Otis, his wife, and two children (the "Otis Claimants") seek a determination that their personal injury claims against the Debtors are neither discharged nor enjoined by the confirmed plan. They contend they were known creditors and should have received actual notice of the bankruptcy.

For the reasons explained below, Mr. Otis is not bound by the Plan discharge and injunction. The claims of his wife and children were discharged and are enjoined by the Plan. Their request to file a late claim is denied.

## BACKGROUND

In June 2022, James Otis allegedly sustained injuries at a Regal movie theater owned by the Debtors. Mr. Otis sat in a broken chair in the theater lobby, causing him to fall backward and hit his head on the floor. ECF No. 991 at 53. Mr. Otis's children were present. ECF No. 991 at 53. Shortly after the incident, Mr. Otis spoke with two theater employees, completed a written report on a blank piece of paper describing his injuries, and provided his contact information, including name, address, phone number and email address. ECF No. 991 at 53–54. Mr. Otis was provided with an email address for the theater's general manager. ECF No. 991 at 54. Mr. Otis testified he was told that

he would get a call within 24 hours and would hear from the general manager within a few days.  ECF No. 991 at 54.

Following the incident, the deputy general manager for the theater prepared an internal incident report.  ECF No. 980-11 at 7.  The incident report provides:

> Guest was going to sit on our lobby chairs and it broke when he sat down, causing him to fall off of it and hit his head.  He's not sure if he hit the [c]hair or table but he felt okay after he got up.  He informed manager because he broke the chair but didn't want to file a claim.

ECF No. 980-11 at 13.  The report does not contain Mr. Otis' name or any contact information.

The incident was also entered into Regal's third-party claims system, RISKTRAC, which is used by Regal and its third-party administrator, Helmsman Management Servies LLC, to track liability incidents.  ECF No. 980-13 at 3. The RISKTRAC entry identifies Mr. Otis as the claimant, including his phone number and a description of the incident.  The claim was reported as "Record Only" which did not prompt Helmsman to contact the claimant or investigate the claim further.  ECF Nos. 980-11 at 6; 991 at 77.  The RISKTRAC entry states that the "Individual Reporting the Claim" is Jacob Pasqualetto, the general manager of the theater.  ECF No. 980-13 at 4.  Based on Mr. Otis's testimony, Mr. Pasqualetto was on vacation at the time of the incident.  Lisa K. Byrnes, vice president of global risk management of Regal Entertainment Group, testified that it was her understanding that Mr. Pasqualetto submitted the RISKTRAC entry.  ECF No. 991 at 88.  She also acknowledged that the "Individual Reporting the Claim" line defaults to the general manager name.  ECF No. 991 at 87–88.  It possibly could have been filled out by someone other than Mr. Pasqualetto.  Because there is no evidence that the entry was made by someone with personal knowledge of the incident, the entry is not admitted for the truth of the matter asserted.  FED. R. EVID. 803(6)(A).  It is admitted for the limited purpose of the existence of the entry.

The following day, Mr. Otis emailed the email address provided by the theater's employees confirming the incident and reporting that he had been diagnosed with a concussion.  Mr. Otis indicated that he was seeking compensation for medical expenses from the Debtors' insurance carrier:

> I am not sure how much information you require but wanted to make you aware of these details in case your insurance company needs this in order to open a claim from yesterday's incident.  I will keep any receipts that I am given in case those are also needed.  I suspect that the bills from today's two procedures (Urgent Care Visit, CT Scan) would both be costly and need to go through your insurance but will wait for your response until I proceed with those.

ECF No. 978-7 at 2.  Mr. Otis did not receive a response and did not follow up with the theater after sending the email.  ECF No. 991 at 57.

In late June 2022, Mr. Otis retained personal injury attorney Casey Reed Johnson.  ECF No. 991 at 23.  On September 7, 2022, the Debtors filed for chapter 11 protection.  The Court established a general bar date of January 17, 2023.

In connection with the bankruptcy case, the Debtors identified potential personal injury claimants using records maintained in the RISKTRAC system.  ECF No. 980-11 at 7. Using that information, the Debtors served bar-date notices to potential creditors.  Mr. Otis was not included on that service list.

In October 2022, Mr. Johnson sent a letter of representation to the theater. ECF No. 978-8.

In November 2022, the Court established a general bar date of January 17, 2023.  Case No. 22-90168, ECF No. 775 at 3.  The bar date order further provides:

> The Debtors shall cause notice of the Claims Bar Date and the Governmental Bar Date to be given by publication to creditors to whom notice by mail is impracticable,

> including creditors who are unknown or not reasonably ascertainable by the Debtors and creditors whose identifes are known but whose addresses are unknown by the Debtors.

Case No. 22-90168, ECF No. 775 at 13. The Debtors provided publication notice of the claims bar date through *The New York Times*, *The Daily Telegraph*, and *The Financial Times*. ECF Nos. 980-2, 980-3, 980-4.

The deadline to file claims passed in January 2023. Mr. Otis did not receive actual notice of bankruptcy and did not file a claim. ECF No. 980-17 at 5.

In June 2023, the Court confirmed the Debtors' chapter 11 plan, effective July 2023. Case No. 22-90168, ECF No. 2067.

Ten months after the bar date passed, in November 2023, Mr. Otis filed his original complaint in California state court based on injuries he sustained at the Debtors' theater. ECF 991 at 45; 978-9. The complaint also named his wife and children as plaintiffs. ECF No. 978-9. The Otis children bring claims for negligent infliction of emotional distress. ECF No. 978-9 at 7. His wife brings a claim for loss of consortium. ECF No. 978-9 at 8. The complaint was not served on the Debtors until April 2024.

Mr. Otis did not learn about the bankruptcy until May 2024. ECF Nos. 991 at 27; 978-12 at 14.

## JURISDICTION & VENUE

28 U.S.C. § 1334(a) provides the District Court with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order

2012-6 (May 24, 2012). This is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A) and (B). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

### DISCUSSION

The Otis Claimants seek a determination that their claims were not discharged and are not subject to the Plan Injunction. They contend they were known creditors who did not receive actual notice of the bankruptcy.

Plan confirmation discharges a creditor's claim against the debtor if the creditor had "notice or actual knowledge" of the case to timely file a proof of claim. 11 U.S.C. § 523(a)(3)(A); *In re Placid Oil Co.*, 753 F.3d 151, 154 (5th Cir. 2014). "Due process requires that notice be 'reasonably calculated, under all the circumstances, to inform interested parties of the pendency' of a proceeding." *Id.* (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). A creditor is not bound by a plan injunction if the debtor fails to provide adequate due process notice of the bankruptcy case. *See Faden v. Ins. Co. of N.A. (In re Faden)*, 96 F.3d 792, 795–96 (5th Cir. 1996) (citing *Mullane*, 339 U.S. at 306, 314)); *Arch Wireless, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.)*, 534 F.3d 76, 87 (1st Cir. 2008).

The sufficiency of notice for Due Process purposes depends on whether the creditor is known or unknown. *Id.* Known creditors must be given actual notice of bankruptcy for their claims to be discharged against the debtor. A creditor is known if the creditor's identity is "reasonably ascertainable" to the debtor. *Placid Oil*, 753 F.3d at 154–55. A creditor is "reasonably ascertainable" if the creditor's identity can be discovered through reasonably diligent efforts. *Id.* (citing *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 489–90 (1988)). These efforts include a "a careful search of the debtor's own records." *Crystal*, 158 F.3d at 297; *In re Drexel Burham Lambert Grp. Inc.*, 151 B.R. 674,

681 (Bankr. S.D.N.Y. 1993) ("A debtor is obligated, however, to undertake more than a cursory review of its records and files to ascertain its known creditors."). "[T]he debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity for whom he would be liable." *Id.*

Unknown creditors, on the other hand, need only to receive constructive notice by publication. *In re Crystal Oil Co.*, 158 F.3d 291, 297 (5th Cir. 1998). The Debtors argue that the Otis Claimants were unknown creditors and publication of notice in major newspapers was sufficient to satisfy due process. A creditor is unknown if the debtor only has information of merely *conceivable, conjectural or speculative* claims. *Placid Oil*, 753 F.3d at 156. A creditor is also unknown if their "interests or whereabouts could not with due diligence be ascertained." *In re J.A. Jones, Inc.*, 492 F.3d 242, 250 (4th Cir. 2007). Ultimately, the inquiry into a creditor's status for notice purposes is fact intensive. *Id.*

Here, the Debtors possessed specific information identifying both the existence of a claim based on an actual injury and the identity of the claimant. Mr. Otis reported the incident, provided his contact information, followed up with a medical diagnosis, and sought compensation for medical expenses. The incident was entered into the theater's internal incident report, and into the Debtors' RISKTRAC system. His personal injury lawyer also sent a letter of representation to the Debtors' theater.

Although the letter appears directed to the Debtors' insurer rather than the Debtors, it states that Mr. Otis has a "claim for damages resulting from injuries sustained as a direct and legal result of the negligence of your insured(s)." ECF No. 978-8 at 2. That communication, along with Mr. Otis incident report and follow up, provided the Debtors with specific information of an actual injury, not merely a foreseeable one. *See Placid Oil*, 753 F.3d at 156 ("[T]he claim of a known creditor must be based on an actualized injury, as opposed to merely foreseeable."). This is unlike other Fifth Circuit decisions

where courts have found a creditor to be unknown.  In *Crystal Oil*, the debtor lacked concrete notice of a creditor's environmental claim because the creditor merely inquired whether the debtor owned the land where contamination occurred.  *Crystal Oil*, 158 F.3d at 298.  The creditor never informed the debtor of the environmental problems underlying its claims.  In *Placid Oil*, the debtor knew about the employee-claimant's exposure to asbestos but had no specific knowledge whether the claimant suffered from asbestos-related injuries.  *Placid Oil*, 753 F.3d at 157.  The claimant was unknown because "widely-known, but general, risks of asbestos exposure do not establish that Placid knew of any specific injury to its employees or any asbestos-related claim." *Id.*  Here, by contrast, Mr. Otis's claims were not merely speculative or foreseeable.

The Debtors seek to analogize this case to *In re Trump Taj Mahal Associates*, 156 B.R. 928 (Bankr. D.N.J. 1993).  There, the tort claimant filed an incident report with an employee at the debtor's premises.  *Id.* at 933.  A few months later, the claimant received a letter from the debtor's claim adjuster offering to compensate her for medical expenses. *Id.*  The claimant never replied to the letter.  Two years later, the claimant filed a complaint against the debtor after the bar date passed. *Id.*  The court concluded that the claimant was an unknown creditor whose claim was "speculative and conjectural."  *Id.*  ("[A]lthough many people in [claimant's] position threaten to file suit against the Taj, only a nominal number, if any, actually bring suit.").

The Debtors likewise assert they receive thousands of slip and fall claims in movie theaters every year; a slim minority of them result in litigation. But unlike the claimant in *Taj Mahal*, Mr. Otis did not passively sit on his claim.  Mr. Otis reported the incident, followed up after receiving a medical diagnosis, and retained counsel who sent a letter.  Despite repeated communications, Mr. Otis never received any follow up from the Debtors.

The critical issue is whether gaps in the Debtors' books and records would render Mr. Otis an unknown creditor for due process

purposes.  The Fifth Circuit has held that a debtor should undertake a careful search of its books and records to ascertain its known creditors. *Crystal Oil*, 158 F.3d at 297.  The Debtors contend they satisfied that obligation.  But the Debtors rely on deficiencies in their own records. The internal incident report omitted Mr. Otis's contact information, which he testified he provided to the employees.  The RISKTRAC entry was classified as "record only" that did not prompt any follow up.

The Debtors' reliance on gaps within its own records does not establish that it was reasonably diligent in ascertaining known creditors. The Fifth and Third Circuits recognize that a creditor may still be reasonably ascertainable even when the creditor's identity and claim are not identifiable through the Debtors' books and records. *Placid Oil*, 753 F.3d at 157 n.5 ("[W]e shed additional light on the space between mere foreseeability and books-and-records knowledge by requiring the debtor possess information regarding a creditor's actual injury, in order for that creditor to be known."); *Chemetron Corp. v. Jones*, 72 F.3d 341, 347 n.2 (3d Cir. 1995) ("Situations may arise when creditors are 'reasonably ascertainable,' although not identifiable through the debtor's books and records.").

The Debtors undisputedly had Mr. Otis's name and phone number in their systems.  At one point, they had his address.  Although the incident was reported as "Record Only" in RISKTRAC, Mr. Otis followed up with the theater the following day at the email address provided to him.  Based on Ms. Byrnes's testimony on the Debtors' internal claims system, the theater should have notified the Risk Management Department of the follow up.  ECF No. 980-11 at 6.  The Risk Management Department would have then informed Helmsman to reach out to Mr. Otis.  ECF Nos. 980-11 at 6, 991 at 77.  If the Debtors diligently followed through with their reporting policies, Mr. Otis' information would have been accurately updated in RISKTRAC. Instead, Mr. Otis did not receive any follow up from the Debtors or Helmsman. Ms. Byrnes also testified that a letter of representation would have generated an investigation.  ECF No. 991 at 77.  But Mr.

Otis did not receive any contact from the Debtors' representatives after the letter of representation was sent to the theater.

Mr. Otis should not bear the consequences of the Debtors' incomplete recordkeeping. Nor can the Debtors satisfy due process notice obligations by relying on a books and records search when it received specific information from Mr. Otis but failed to comply with their internal claims reporting system.

The Debtors further rely on the language in the Confirmation Order. The relevant portion of the Confirmation Order provides:

> The Debtors shall cause notice of the Claims Bar Date and the Governmental Bar Date to be given by publication to creditors to whom notice by mail is impracticable, including creditors who are unknown or not reasonably ascertainable the Debtors and **creditors whose identities are known but whose addresses are unknown by the Debtors**.

ECF No. 980-1 at 13 (emphasis added). This language partially incorporates Bankruptcy Rule 2002(l), which permits the Court to authorize notice by publication when notice by mail is impracticable or where publication can supplement notice. However, the provision does not (and could not) waive the constitutional requirement that creditors, if "known," must receive actual notice.

Based on the preponderance of the evidence, the Court finds that Mr. Otis was a known creditor. Because Mr. Otis was a known creditor who did not receive actual notice, Mr. Otis is not bound by the plan discharge or injunction.

The Debtors request to limit the remedy to allowance of a late-filed claim, citing several cases that purport to support allowance of a late filed claim. None are availing for Debtors' position. In *Buttes Gas & Oil Co. v. Ca. Regional Water Quality Control Board (In re Buttes Gas & Oil Co.)*, both parties did not "fairly contemplate" that environmental problems caused by the debtor pre-petition would amount to liability for

a claim.  182 B.R. 493, 500 (Bankr. S.D. Tex. 1994) ("Each party was equally ignorant of one another and of the problems on the site at the time of BGO's plan confirmation . . . ."). The court decided that although the creditor did not receive sufficient notice, a late filed claim is appropriate based on the parties' mutual ignorance of a claim.  *Id.* at 500–01 ("This court has before it another case with an extraordinary set of circumstances, involving a twenty year time lapse, change of agency identity, and significant notice problems on both sides.").   Such extraordinary circumstances are absent here.

*In re Eagle Bus Mfg., Inc.*, 62 F.3d 730 (5th Cir. 1995) and *In re Hunt*, 146 B.R. 178 (Bankr. N.D. Tex. 1992) concerned allowance of late-filed claims based on excusable neglect.  Those cases did not involve failure to provide constitutionally adequate notice to creditors.  *Fogel v. Zell*, 221 F.3d 955 (7th Cir. 2000) did not address the adequacy of notice for purposes of § 523 discharge.   The *Fogel* court addressed the treatment of late claims in the distribution of assets in a chapter 7 case. *Id.* at 966.

The Court recognizes that Mr. Otis may receive a windfall by not being bound by the discharge while other creditors participated in the case.   But the Court cannot resort to equity to override due process concerns.   The Court may not enforce the plan injunction against a creditor who was not afforded his due process rights.

With respect to Mr. Otis's wife and children,  the record is devoid of evidence that the Debtors knew or should have known with reasonable diligence that they suffered actual injuries giving rise to claims.    The Otis's sole argument is that the children were present at the time of the incident.  That fact alone is insufficient to charge the Debtor notice of a claim.  Mr. Otis did not identify injuries to his wife or children in his communications with the Debtors.  They were unknown creditors.

In the alternative, Mr. Otis's wife and children seek allowance of a late filed claim.  Bankruptcy Rule 9006 provides that a court may

extend time to act if "failure to act within that period resulted from excusable neglect." FED. R. BANKR. P. 9006(b)(1)(B). In determining whether neglect is excusable, courts consider four factors from the U.S. Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). These factors are: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings: (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.* at 395.

The absence of actual notice does not constitute excusable neglect. As unknown creditors, Mr. Otis's wife and children were properly charged with constructive notice by publication. Despite that notice, they failed to file a timely claim. They have not identified circumstances beyond their control that prevented a timely filing of a claim.

The request to file a late claim is denied.

Lastly, the Mr. Otis's wife and children seek relief from the plan discharge and injunction to adjudicate their personal injury claims nominally against the Debtors to collect any proceeds from insurance policies providing coverage for the claims.

Section 524 shields a debtor from personal liability on discharged claims. 11 U.S.C. § 524; *In re Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993). The debt itself is not extinguished, but the discharge acts as an injunction against any action pursued by creditors to recover on a claim against the debtor. *See Edgeworth*, 993 F.2d at 53. Section 524(a) does not prevent a creditor from pursuing nominal liability against the debtor. *Id.* at 54 ("Section 542(a)(2) enjoins only suits to "collect, recover or offset" a debt as the "personal liability of the debtor," a phrase that has been interpreted to exclude mere nominal liability.). This is the "insurer exception" to discharge.

The exception does not apply where recovery against insurance would require the debtor to bear substantial costs, like a self-insured retention. *See, e.g.*, *In re Valaris PLC*, No. 20-34114, 2025 WL 392482

(Bankr. S.D. Tex. Feb. 4, 2025) (denying a personal tort claimant relief from plan injunction because the debtor's insurance policy contained an unexhausted SIR in the amount of $9.4 million); *In re Tailored Brands, Inc.*, No. 20-33900, 2021 WL 2021472, at *3 (Bankr. S.D. Tex. May 20, 2021) ("In a proceeding against a discharged debtor, a claimant may not recover damages from the debtor directly, nor force the debtor to incur 'substantial' defense costs.").

Here, the Debtor's insurance policy applicable to the Otis claims contains an SIR in the amount of $400,000.00. ECF No. 991 at 106. Through the end of December 2025, the Debtor incurred about $25,000 in defense costs related to the Otis claims. ECF No. 991 at 107. The Debtor would have to incur roughly another $375,000.00 in costs and liability before insurance proceeds are available. Permitting the wife and children to proceed on their claims would impose substantial financial burden on the Debtors.

The Otis wife and children cannot obtain relief from the plan injunction under the insurer exception to discharge.

**CONCLUSION**

A separate order will be entered.

SIGNED 04/01/2026

Marvin Isgur
United States Bankruptcy Judge
